**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHAD PAWLAK, | ) CASE NO. 1:26-CV-01264 |
| | ) |
| Plaintiff, | ) |
| | ) JUDGE CHARLES ESQUE FLEMING |
| vs. | ) |
| | ) |
| LOCUS MANAGEMENT, LLC and | ) |
| LOCUS HOLDINGS, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT LOCUS HOLDINGS, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

**Page**

I.       **INTRODUCTION**.............................................................................................................. 1

II.      **BACKGROUND** ............................................................................................................... 2

III.     **LEGAL STANDARD** ...................................................................................................... 4

IV.     **ARGUMENT**.................................................................................................................... 6

     A.  **PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO
         ESTABLISH SUCCESSOR LIABILITY AGAINST HOLDINGS.** ...................... 6

     B.  **PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUDULENT
         TRANSFER.** ................................................................................................................ 12

V.      **CONCLUSION** ................................................................................................................ 16

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                   **Page(s)**

*16630 Southfield Ltd. P'ship v. Flagstar Bank*,
    727 F.3d 502 (6th Cir. 2013)........................................................................................5, 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................4, 5

*Bates v. Green Farms Condo. Ass'n*,
    958 F.3d 470 (6th Cir. 2020) ........................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................4

*Burtch v. Huston (In re USDigital, Inc.)*,
    443 B.R. 22 (Bankr. Del. 2011) ..................................................................................15

*City Mgmt. Corp. v. U.S. Chem. Co.*,
    43 F.3d 244 (6th Cir. 1994) ..........................................................................................6

*In re Cont'l Cap. Inv. Servs., Inc.*,
    No. 03-3370, 2006 WL 6179374 (Bankr. N.D. Ohio June 12, 2006)..........................12

*Courtright v. City of Battle Creek*,
    839 F.3d 513 (6th Cir. 2016) ........................................................................................5

*Engle v. UHaul*,
    208 F. Supp. 3d 844 (S.D. Ohio 2016) ......................................................................13

*Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*,
    2021 Bankr. LEXIS 1643 (Bankr. N.D. Tex. 2021)....................................................14

*First Fin. Bank v. Fox Cap. Grp., Inc.*,
    692 F. Supp. 3d 762 (S.D. Ohio 2023) ......................................................................14

*Flaugher v. Cone Automatic Mach. Co.*,
    30 Ohio St. 3d 60 (1987)..................................................................................6, 10, 11

*Garcia v. Garcia (In re Garcia)*,
    494 B.R. 799 (Bankr. E.D.N.Y. 2013)........................................................................14

*Germain v. Teva Pharms., USA (In re Darvocet, Darvon, & Propoxyphene Prods.*
    *Liab. Litig.)*,
    756 F.3d 917 (6th Cir. 2014)........................................................................................5

*HDC, LLC v. City of Ann Arbor*,
    675 F.3d 608 (6th Cir. 2012) ........................................................................................5

iii

*Hobart Corp. v. Dayton Power & Light Co.*,
   No. 3:13-CV-115, 2014 WL 631518 (S.D. Ohio Feb. 18, 2014) ..............................................7

*Hoover v. Recreation Equip. Corp.*,
   792 F. Supp. 1484 (N.D. Ohio 1991)......................................................................................8

*Per-Co, Ltd. v. Great Lakes Factors, Inc.*,
   509 F. Supp. 2d 642 (N.D. Ohio 2007)...................................................................................11

*Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*,
   112 Ohio St. 3d 482 (2006)................................................................................................6, 7

*Smith v. Gen. Motors LLC*,
   988 F.3d 873 (6th Cir. 2021).................................................................................................5

*Sms Fin. Ncu, LLC v. Zovkic*,
   No. 1:25-CV-00812-DCN, 2026 WL 629603 (N.D. Ohio Mar. 6, 2026) ...............................14

*Spradlin v. Wrigley's 7-711, Inc. (In re Licking River Mining, LLC)*,
   572 B.R. 830 (Bankr. E.D. Ky. 2017).....................................................................................12

*US Herbs, LLC v. Riverside Partners, LLC*,
   711 F. App'x 321 (6th Cir. 2017)...........................................................................................8

*Van-Am. Ins. Co. v. Schiappa, et al.*,
   191 F.R.D. 537 (S.D. Ohio 2000) .........................................................................................12

*Wagner v. Galipo*,
   50 Ohio St. 3d 194 (1990)....................................................................................................12

*Welco Indus., Inc. v. Applied Cos.*,
   67 Ohio St. 3d 344 (1993)..................................................................................6, 9, 10, 11

**Statutes**

O.R.C. § 1336.01(B) ...............................................................................................................13

O.R.C. § 1336.01(H)...............................................................................................................13

O.R.C. § 1336.01(L) ...............................................................................................................13

O.R.C. § 1336.04(A)(1)...........................................................................................................12

O.R.C. § 1336.04(A)(2) ...............................................................................................12, 14, 15

O.R.C. § 1336.04(B) ...........................................................................................................11, 14

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................12

## MEMORANDUM IN SUPPORT

### I.     INTRODUCTION

The Complaint filed by Plaintiff Chad Pawlak ("Plaintiff") is fundamentally flawed and fails to meet basic pleading standards.  The law is clear that a well-pled complaint must contain sufficient facts to evidence a plausible claim for relief on its face.  Plaintiffs cannot simply recite the bare elements of a cause of action, hide behind conclusory allegations or statements of law, or plead key facts upon information and belief.  And yet, that is exactly what Plaintiff has done.

In Count Two of the Complaint, Plaintiff seeks to impose successor liability on Defendant Locus Holdings, LLC ("Holdings") for a debt owed by Locus Management, LLC ("Management") arising from an old arbitration award.[1]  Plaintiff tacitly recognizes the general rule in Ohio that a company is <u>not</u> liable for the debts of another company under a successor liability theory subject to four exceptions.  Complaint, ¶ 53.  Thus, Plaintiff's claim depends entirely on being able to allege sufficient facts to support all required elements for at least one of those possible exceptions. Plaintiff strains, but fails, to do so.

For example, Plaintiff alleges "upon information and belief" that Holdings "expressly or impliedly" assumed Management's liabilities, including those associated with the arbitration award.  Complaint, ¶ 49.  No facts are put forth to demonstrate a reasonable basis for this belief or render it anything other than pure conjecture.  Plaintiff also alleges that Holdings must have merged with Management or should be considered a "mere continuation" of Management, or that a fraud has occurred, simply because certain trade names owned by Management were assigned to and are being used by Holdings.  Complaint, ¶¶ 50-51.  Acquiring and using trade names does not

---

[1] Count One of the Complaint does not seek relief against Holdings.  It seeks only to confirm the arbitration award against Management.  As such, Holdings does not address it in this memo and reserves all rights with respect to the same.

amount to any of those things, as that can happen in any routine asset sale or secured creditor foreclosure.  To say otherwise requires an enormous leap to a conclusion unsupported by facts.  As set forth below, there is a very high bar for establishing whether an exception exists to the general rule of <u>no</u> successor liability.  These minimal allegations fall far short of meeting that bar.

Count Three of the Complaint is similarly deficient.  This count asserts that certain "acts" were done with actual intent to hinder, delay or defraud Plaintiff or were not in exchange for reasonably equivalent value in exchange.  Complaint, ¶¶ 63-64.  This is nothing more than a barebones recitation of the elements of a fraudulent transfer claim based on actual fraud and constructive fraud theories.  No facts are pled demonstrating fraudulent intent.  Similarly, no facts are pled regarding what consideration was actually given in exchange for the alleged transfers or why that consideration was not reasonably equivalent in value.  The clear absence of facts requires a dismissal of this claim with prejudice.

For these reasons and those discussed further below, Plaintiff's claims against Holdings should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## II.   BACKGROUND

Plaintiff alleges he was employed by Management under an Employment Agreement and was ultimately terminated in violation of that agreement.  Complaint, ¶¶ 8, 11.  There is no allegation that Plaintiff worked for Holdings or had any contractual privity with Holdings.  Nor is there any allegation that Holdings was involved in Plaintiff's termination in any way.  Indeed, the termination is alleged to have occurred on October 13, 2023 (*Id.*, ¶ 11), approximately ten months before Holdings was even formed.

On or about February 14, 2024, Plaintiff alleges that he initiated arbitration proceedings against Management alleging breach of contract and retaliation claims.  *Id.*, ¶¶ 11-12.  There is no

allegation that Holdings was a party to or otherwise involved in those proceedings.  During the course of the proceedings, Management was dissolved pursuant to a certificate of dissolution filed with the Ohio Secretary of State on December 3, 2024.  *Id*., ¶¶ 18-19.  Seven months later, on or about July 15, 2025, the arbitrator issued a final arbitration award in favor of Plaintiff requiring Management to pay approximately $1.2 million in damages, attorney fees, and costs (the "Arbitration Award").  *Id*., ¶13.

Plaintiff alleges, *upon information and belief*, that Management was dissolved "as part of a merger involving numerous Locus entities."  *Id*., ¶ 20.  No facts are alleged as to the basis for the belief that a "merger" had taken place, as opposed to any other form of corporate transaction (such as an asset sale or a foreclosure by secured lenders).

Plaintiff also alleges, *upon information and belief*, that Management and numerous related Locus entities entered into a Restructuring Agreement on or about October 17, 2024.  *Id*., ¶ 21.  No facts are alleged as to the basis for the belief that a "Restructuring Agreement" was entered or as to any details of such agreement, including who the parties were, whether it provided for or addressed in any way the assumption of any liability of Management (let alone liability for the Arbitration Award), and what any other substantive terms were.

Plaintiff alleges that Holdings was formed on August 12, 2024, and that, after executing the Restructuring Agreement in October of 2024, Management and other Locus entities "took steps to transfer certain assets into a newly formed entity known as Locus Holdings, LLC."  *Id*., ¶¶ 23-24.  Plaintiff alleges that "many" of such assets were owned by Management, including various trade names that were assigned to Holdings and that Holdings now uses.  *Id*., ¶¶ 25-37.

Aside from identifying certain trade names that were owned by Management and attaching copies of assignments of those trade names, Plaintiff fails to allege any details regarding the

3

assignments to suggest they were improper in any respect — for example, whether any consideration was given, whether the trade names were unencumbered or subject to security interests, or whether the trade names had any value above any security interests that would have been available for unsecured creditors like Plaintiff. Plaintiff also fails to allege any facts as to whether Management owned any other assets besides the assigned trade names, whether those assets were transferred to Holdings too, whether any consideration was given for those other transfers, whether those assets were unencumbered or subject to security interests, or whether those assets held any value for unsecured creditors.

The entire sum and substance of Plaintiff's factual allegations relevant to Holdings can be boiled down to:

- Management dissolved during Plaintiff's arbitration proceedings, purportedly as part of a "merger" involving other entities;
- Holdings was formed during the arbitration proceedings;
- Management and other entities entered into some form of "Restructuring Agreement," after which many assets owned by Management were transferred to Holdings, including trade names that were owned by Management; and
- Holdings now uses those trade names.

## III.    <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). Courts must read the complaint "in the light most favorable to the plaintiff, accept all well-pleaded allegations as true, and draw all reasonable

4

inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Courts need not, however, "accept as true legal conclusions or unwarranted factual inferences." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quotation omitted).  In that vein, merely pleading that a defined statutory term applies without alleging facts to plausibly support the term's application is a "conclusory statement" that is "not entitled to the assumption of truth." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (pleading that defendants "were acting as debt collectors" under Fair Debt Collections Practices Act was a "conclusory statement" and "not entitled to the assumption of truth" without facts to plausibly suggest defendants met definition).  Likewise, offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal* at 678 (quoting *Twombly* at 555).

Furthermore, pleading facts "on information and belief" without providing a plausible factual basis for such belief also fails to meet the pleading standards established under *Twombly* and *Iqbal*.  *See, e.g.*, *Germain v. Teva Pharms., USA (In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.)*, 756 F.3d 917, 931 (6th Cir. 2014) (rejecting facts pled on information and belief because, to survive a motion to dismiss, a complaint must plead facts that create a plausible inference of wrongdoing and "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true."); *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502, 506 (6th Cir. 2013) (finding facts pled on information and belief insufficient because the plaintiffs "have merely alleged their 'belief'"); *Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (explaining that, to survive a motion to dismiss, claims pled on information and belief

must set forth a factual basis for such belief and cannot be based on speculation and conclusory allegations).

Complaints built on these kinds of conclusory allegations, as the Complaint is here, are deficient and should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## IV.     ARGUMENT

The only claims in the Complaint that are directed at Holdings are set forth in Counts Two and Three. Count Two attempts to establish a claim of successor liability against Holdings with respect to the Arbitration Award by alleging that one of the exceptions to the general rule that there is no successor liability is present. Count Three seeks to avoid the assignment of trade names and certain other unspecified "acts" as fraudulent transfers under Section 1336.04 of the Ohio Revised Code. Neither claim is plausible based on the limited and conclusory "facts" alleged in the Complaint.

### A.     PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO ESTABLISH SUCCESSOR LIABILITY AGAINST HOLDINGS.

It is well-established that the general rule under Ohio law is there is no successor liability – *i.e.*, a company that acquires the assets of another company is not liable for the debts of that other company. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St. 3d 482, 491 (2006) ("Ohio has adopted the general rule of successor liability, which provides that the purchaser of a corporation's assets is not liable for the debts and obligations, including liability for tortious conduct, of the seller corporation."); *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 349 (1993); *Flaugher v. Cone Automatic Mach. Co.*, 30 Ohio St. 3d 60, 62 (1987); *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994) (describing non-assumption of liability in asset transactions as "the universally-accepted general rule").

6

There are four exceptions to this general rule: (1) the buyer expressly or impliedly agrees to assume such liability (the "Assumption Exception"); (2) the transaction amounts to a de facto consolidation or merger (the "Merger Exception"); (3) the buyer corporation is merely a continuation of the seller corporation (the "Mere Continuation Exception"); or (4) the transaction is entered into fraudulently for the purpose of escaping liability (the "Fraud Exception"). *Pilkington* at 491. The Complaint fails to allege facts sufficient to establish that any exception applies.

### 1. *Plaintiff fails to plead facts to support the Assumption Exception.*

Plaintiff's allegations regarding the Assumption Exception are confined to a single paragraph: "Upon information and belief, Locus Holdings, LLC expressly or impliedly assumed Locus Management, LLC's liabilities, including the liabilities associated with Plaintiff's arbitration case (and the subsequent damages award) against Locus Management, LLC." Complaint, ¶ 49. This is a textbook example of parroting the elements of a cause of action without any factual support.

Plaintiff fails to plead any facts alleging that Holdings expressly assumed any liability of Management, let alone Management's liability with respect to the Arbitration Award. Conclusory legal allegations are not sufficient to survive a motion to dismiss unless supported by specific factual allegations. *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-CV-115, 2014 WL 631518, at *3-4 (S.D. Ohio Feb. 18, 2014) (rejecting the Assumption Exception where no factual allegations were made to support a claim that the buyer expressly or impliedly assumed the liabilities of the seller). Furthermore, as noted above, pleading allegations on information and belief is insufficient where the belief is not supported by plausible facts. *16630 Southfield Ltd. P'ship*, 727 F.3d at 506 (rejecting allegations pled on information and belief that were "naked

assertions devoid of further factual enhancement" and contributed nothing to the sufficiency of the complaint).

Closer analysis of express and implied assumption only reinforces the inadequacy of Plaintiff's pleading.  Express assumption is concerned with the express language of contracts and whether, under those terms, a buyer assumed the seller's liabilities.  *See*, *Hoover v. Recreation Equip. Corp.*, 792 F. Supp. 1484, 1492-93 (N.D. Ohio 1991) (analyzing contract language to assess express assumption).  Implied assumption occurs when a buyer, despite not having a contractual obligation to do so, renders performance in accordance with the seller's obligations (*e.g.*, by paying the seller's debts).  *US Herbs, LLC v. Riverside Partners, LLC*, 711 F. App'x 321, 325 (6th Cir. 2017).

Here, although Plaintiff references the existence of a "Restructuring Agreement" (Complaint, ¶ 21), he fails to allege any substantive detail of that agreement, including whether it provided for any express assumption of Management's liabilities or if Holdings was even a party to it.  Nor does Plaintiff ever allege that Holdings undertook some course of performance that might constitute implied assumption of Management's obligations in respect of the Arbitration Award.  Thus, Plaintiff has failed to adequately plead the Assumption Exception.

### 2.    *Plaintiff fails to plead facts to support the Merger Exception.*

In attempting to plead the Merger Exception, Plaintiff points only to the assignment of trade names to Holdings and Holdings' use of those trade names and summarily concludes that a "merger" must have occurred: "Additionally, the assignment of various trade names by Locus Management, LLC to Locus Holdings, LLC, coupled with the continued use of those trade names by Locus Holdings, LLC, as evidenced by ¶¶ 33-36, shows that the creation of Locus Holdings, LLC was merely a de facto merger."  Complaint, ¶ 50.  This is not enough for the Merger Exception to apply.

8

> The "hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations necessary to continue the predecessor's business operations."

*Welco Indus., Inc.*, 67 Ohio St. 3d at 349.

Plaintiff fails to plead sufficient facts to address these hallmarks. The only allegation concerning the continuation of previous business activity is that Holdings is using trade names previously owned by Management. There are no allegations describing what Management did in terms of actual business activity (aside from owning trade names) and to what extent that activity is being continued by Holdings.[2] There are also no allegations concerning the continuation of Management's corporate personnel. Nor are there any allegations regarding the continuity of shareholders resulting from a sale of assets in exchange for stock, which has been referred to by courts as "the sine qua non of de facto merger." *Id.*, citing *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir. 1977) (internal citation omitted). Plaintiff has also failed to allege facts to support the allegation that Holdings assumed all liabilities and obligations necessary to continue Management's business operations (whatever those operations may have been).

Instead of addressing these required hallmarks, Plaintiff focuses only on the assignment and continued use of trade names. But assigning trade names and other assets is also something commonly done in other forms of corporate transactions besides a merger – for example, in connection with an asset sale or a foreclosure by a secured lender. Once again, Plaintiff makes significant leaps based upon limited facts in his attempt to pin liability for the Arbitration Award on Holdings. Despite Plaintiff's efforts, he fails to adequately plead the Merger Exception.

---

[2] Indeed, Plaintiff references thirteen other Locus entities (Complaint, ¶ 21) but fails to allege what business was conducted by Management specifically, as distinct from business operations conducted by the other entities, or that Management had any ongoing business operations.

9

### 3.    *Plaintiff fails to plead facts to support the Mere Continuation Exception.*

Plaintiff attempts to invoke the Mere Continuation Exception based on the same limited facts he tried using for the Merger Exception – i.e., that trade names were assigned to and are being used by Holdings.  Complaint, ¶¶ 50-51.  These limited facts fall far short of what is needed to adequately plead the Mere Continuation Exception.

As a threshold matter, as noted above, the assignment and use of trade names alone is something common in many ordinary asset sale transactions and foreclosure transactions.  This alone underscores the absurdity of Plaintiff's allegations as to the Mere Continuation Exception.  If simply assigning and using trade names was enough to create successor liability, then every ordinary asset sale or foreclosure transaction involving an assignment and use of a trade name by the buyer would expose the buyer to claims that it is a mere continuation of the seller and subject to successor liability, which is an absurd result.

That point aside, Plaintiff ignores the required elements for establishing the Mere Continuation Exception.  Under Ohio law, the rule of continuity can be summarized as "ownership, not operations."  A mere continuation occurs when "one corporation sells its assets to another corporation **with the same people owning both corporations**" such that "the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation" and the transaction "is actually a reorganization." *Welco Indus., Inc.*, 67 Ohio St. 3d at 350 (emphasis added) (quotation omitted).  Some states have expanded the Mere Continuation Exception to include continuity of operations (same employees, business names, facilities, products, etc.). *Id.* at 347-348; *Flaugher*, 30 Ohio St. 3d at 64-65.  Ohio is <u>not</u> one of them.  Indeed, "[t]he gravamen of the traditional 'mere continuation' exception is the continuation of the *corporate entity* rather than continuation of the business operation." *Flaugher* at 64 (quotation omitted) (emphasis in opinion). With this focus,

10

"[t]he exception has been narrowly construed to protect corporations from unassumed liabilities." *Id.*

Indeed, the Ohio Supreme Court held in *Welco Industries* that the Mere Continuation Exception did not apply where the owners of the successor company were not the same as the owners of the predecessor company, even though the successor company had "the same physical plant, officers, employees and product line as [the predecessor] had." *Welco Indus., Inc.* at 350. The question boils down to *ownership*, not operations. If a complaint fails to allege facts showing that ownership is the same, the key requirement for the Mere Continuation Exception is missing. Plaintiff's allegations fail within this framework.

Here, Plaintiff alleges that Holdings obtained trade names belonging to Management and is using them. But Plaintiff fails to allege <u>any</u> facts concerning the ownership of Holdings as compared to the ownership of Management. For the Mere Continuation Exception to apply, *ownership must be the same*. Common names and operations are insufficient. Thus, Plaintiff has failed to adequately plead the Mere Continuation Exception.

### 4.    *Plaintiff fails to plead facts to support the Fraud Exception.*

Plaintiff's invocation of the Fraud Exception fares no better. He alleges only that the assignment and use of trade names, combined with the dissolution of Management without a winding up, "has the appearance of fraud." Complaint, ¶ 52. This falls short of the pleading requirements.

In *Welco Industries*, the Supreme Court of Ohio identified two indicia of fraud for this exception: inadequate consideration and lack of good faith. *Welco Indus., Inc.*, 67 Ohio St.3d at 349. As this Court has previously noted, statutory "badges of fraud" may also be instructive. *Per-Co, Ltd. v. Great Lakes Factors, Inc.*, 509 F. Supp. 2d 642, 654 n.15 (N.D. Ohio 2007); O.R.C. § 1336.04(B). Furthermore, a heightened pleading standard applies when addressing fraud. Claims

11

of fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  No matter the standard, Plaintiff fails to meet it.

The Complaint fails to allege any facts concerning what consideration was received by Management in exchange for the assigned trade names and why it was inadequate.  Nor are there any facts addressing matters of intent or good faith.  Once again, Plaintiff offers only conclusory statements devoid of factual support and grounds his claims in pure speculation and conjecture. Without more, Plaintiff has failed to adequately plead the Fraud Exception.

**B.      PLAINTIFF  FAILS  TO  STATE  A  CLAIM  FOR  FRAUDULENT TRANSFER.**

Although Plaintiff styles his fraudulent transfer cause of action as a single claim, he advances two different theories of recovery within it.  The Ohio Uniform Fraudulent Transfers Act, O.R.C. § 1336.01, *et seq.*, ("UFTA") allows a plaintiff to recover for different kinds of fraudulent transfers, including those done "with actual intent to delay, hinder, or defraud," O.R.C. § 1336.04(A)(1), and transfers made "without receiving reasonably equivalent value in exchange," O.R.C. § 1336.04(A)(2) (respectively, "actual intent" claims and "constructive intent" claims). *See, e.g., First Fin. Bank v. Fox Cap. Grp., Inc.*, 692 F. Supp. 3d 762, 770 (S.D. Ohio 2023).  Here, Plaintiff alleges actual fraud and constructive fraud claims.  Complaint, ¶¶ 63-64.  Both claims are devoid of factual support and must fail.

As noted above, claims based on actual fraud are subject to a heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g., Van-Am. Ins. Co. v. Schiappa, et al.*, 191 F.R.D. 537, 542-43 (S.D. Ohio 2000) (analyzing *Wagner v. Galipo*, 50 Ohio St.3d 194 (1990) and applying Rule 9(b) to actual intent claim); *also see In re Cont'l Cap. Inv. Servs., Inc.*, No. 03-3370, 2006 WL 6179374, at *8 (Bankr. N.D. Ohio June 12, 2006) (dismissing actual intent claim under Rule 9(b)); *Spradlin v. Wrigley's 7-711, Inc. (In re Licking River Mining, LLC)*, 572

12

B.R. 830, 837 (Bankr. E.D. Ky. 2017) (applying the heightened pleading standard of Rule 9(b) to actual intent claim).  Thus, Plaintiff has an even higher bar to jump for this claim than for the successor liability claim.

### 1. *Plaintiff fails to allege that a "Transfer" has occurred under Ohio's UFTA.*

As a threshold matter, Plaintiff begins his fraudulent transfer claim by referencing numerous defined terms under Ohio's UFTA and making conclusory statements about how those defined terms apply to Plaintiff's allegations.[3]  Complaint, ¶¶ 56-62.  Conspicuously absent is any reference to the definitions of "Asset" or "Transfer," as those terms are defined in O.R.C. § 1336.01(B) and (L), respectively, and whether any Asset was in fact Transferred by Management to Holdings under those definitions.

A "Transfer" is only subject to avoidance as a fraudulent transfer under Ohio's UFTA if it involves "disposing of or parting with an asset or an interest in an asset." O.R.C. § 1336.01(L).  The term "Asset" is defined to mean "property of a debtor" excluding any property "to the extent it is encumbered by a valid lien." O.R.C. § 1336.01(B).  Plaintiff fails to allege that the trade names at issue, or any other assets of Management that are alleged to have been transferred to Holdings for that matter, were unencumbered at the time of transfer.[4]  Without those allegations, Plaintiff

---

[3] Holdings reserves all rights to dispute such conclusory assertions.  For example, Plaintiff asserts without any support that "[t]he claim from JAMS case no. 5390000131 and the Arbitration Award each constitute a 'lien' as defined by O.R.C. § 1336.01(H)."  However, that definition of "lien" states as follows: "Lien" means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common law lien, or a statutory lien."  Plaintiff fails to state the basis for how a claim in an arbitration or an arbitrator's award amounts to any of those things and Holdings disputes that any lien exists in favor of Plaintiff.

[4] Pawlak cannot credibly make this allegation given that financing statements encumbering all of Management's assets were on file as of November 6, 2024, when the trade name assignments are alleged to have occurred, of which the Court can take judicial notice. *See Engle v. UHaul*, 208 F. Supp. 3d 844, 848-49 n.3 (S.D. Ohio 2016) (at the motion to dismiss stage, courts may take judicial notice of documents filed with the Ohio Secretary of State as public records); Complaint, Exs. 4, 5, 6, 7 (trade name registrations filed by Locus Holdings on November 6, 2024); UCC Financing Statement, No. OH00278725898 (Ohio Sec. of State, filed Jan. 18, 2024) (statement terminated Nov. 8, 2024 and encumbering "All assets of the Debtor, whether now existing or hereafter arising, and wherever located.").

13

has failed to allege that any "Transfer" has occurred for purposes of Ohio's UFTA, let alone a fraudulent one.

### 2. *Plaintiff fails to allege an actual intent claim.*

Even if Plaintiff can adequately allege the existence of a "Transfer" under Ohio's UFTA, which it cannot, Plaintiff fails to allege any facts demonstrating that such a transfer was fraudulent either as an actual intent claim or a constructive intent claim. For actual intent claims, courts look to the badges of fraud contained in O.R.C. § 1336.04(B) to assess fraudulent intent. *Sms Fin. Ncu, LLC v. Zovkic*, No. 1:25-CV-00812-DCN, 2026 WL 629603, at \*5-7 (N.D. Ohio Mar. 6, 2026) (listing and assessing badges of fraud). Notably, for these badges to lead an inference of fraudulent intent, a plaintiff need not allege "the presence of all badges of fraud," but at least three are typically required to support such an inference. *Id.* at \*5 (quoting *Blood v. Nofzinger*, 162 Ohio App. 3d 545, 559 (2005). As already established, Plaintiff offers only unsupported and conclusory allegations that parrot badges/indicia of fraud. He cannot sustain an actual intent claim by reciting bare statutory requirements.

### 3. *Plaintiff fails to allege a constructive intent claim.*

Plaintiff's attempt to raise a constructive intent claim similarly outright ignores relevant statutory requirements. First, a transfer can only be fraudulent under O.R.C. § 1336.04(A)(2) when it is made "without receiving reasonably equivalent value in exchange." At the pleading stage, a plaintiff must allege facts to demonstrate a lack of reasonably equivalent value and cannot simply assert in conclusory fashion that there is a lack of reasonably equivalent value. *See, e.g.*, *Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*, 2021 Bankr. LEXIS 1643, \*12 (Bankr. N.D. Tex. 2021) ("Under Rule 8, conclusory statements are insufficient to withstand a motion to dismiss. A complaint that only states that the debtor received less than reasonably equivalent value does not meet the pleading standard of Rule 8."); *Garcia v. Garcia (In re Garcia)*,

14

494 B.R. 799, 815 (Bankr. E.D.N.Y. 2013) (dismissing constructive intent claim where complaint failed to plead any facts concerning the value of membership interests at issue as compared to the consideration received in exchange for them); *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 39 (Bankr. Del. 2011) (dismissing constructive intent claim where complaint failed "to provide any factual allegations supporting the assertion that USDigital did not receive reasonably equivalent value for the secured interest in the set top boxes.").

Here, there are no allegations in the Complaint about what consideration was provided to Management and the basis for alleging that it was not reasonably equivalent in value to what was transferred. There are only naked conclusory statements by Plaintiff. But even if Plaintiff could plead facts showing a lack of reasonably equivalent value, Plaintiff must <u>also</u> allege that one of the following two conditions was met:

> (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

> (b) The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

O.R.C. § 1336.04(A)(2). Plaintiff does not even attempt to allege that either condition is satisfied here.

Because Plaintiff fails to allege any facts to support a lack of reasonably equivalent value and because the Complaint contains neither facts providing any insight into the "remaining assets" of Management, nor facts addressing whether Management "believed or reasonably should have believed" that it would incur any debts, let alone its "ability to pay" them, Plaintiff has failed to state a plausible constructive intent claim.

15

## V.     CONCLUSION

For the foregoing reasons, all of Plaintiff's claims against Holdings must be dismissed with prejudice for failure to state a plausible claim for relief on the face of the Complaint.


Dated: July 29, 2026                                          Respectfully submitted,

*/s/ Elliot M. Smith*
ELLIOT M. SMITH (0078506)
DAVID R. MAYO (0014345)
DAVID M. WALTERS (0104248)
**BENESCH, FRIEDLANDER, COPLAN &
   ARONOFF LLP**
127 Public Sq., Ste. 4900
Cleveland, OH 44114
Telephone:  216.363.4500
Email:  dmayo@beneschlaw.com
          esmith@beneschlaw.com
          dwalters@beneschlaw.com

*Attorneys for Defendant Locus Holdings, LLC*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2026, a true and accurate copy of the foregoing was electronically filed and served by virtue of the Court's electronic filing system on the following:

Michael R. Fortney (0092325)
**FORTNEY LAW, LLC**
300 Weatherstone Dr. #303
Wadsworth, OH 44281
Telephone:  330.619.8502
Email:  mike@ohiolienlawyer.com

*Attorney for Plaintiff Chad Pawlak*

/s/ Elliot M. Smith
ELLIOT M. SMITH

17

28930124