**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CHAD PAWLAK<br><br>Plaintiff,<br><br>vs.<br><br>LOCUS MANAGEMENT, LLC, et al.<br><br>Defendants. | CASE NO. 1:26-cv-1264<br><br>JUDGE CHARLES ESQUE FLEMING<br><br>**PLAINTIFF'S RESPONSE IN OPPOSTION TO DEFENDANT LOCUS HOLDINGS, LLC'S MOTION TO DISMISS** |

## INTRODUCTION AND FACTS

Plaintiff Chad Pawlak worked for Defendant Locus Management, one of several predecessor corporate entities to Defendant Locus Holdings, from March 2021 until October 2023, when it terminated him in direct breach of the express provisions of his Employment Agreement. ECF No. 11, Pl. Amend. Compl. ¶¶ 6-8, 11. In addition to constituting a breach of his Employment Agreement, Pawlak's firing was also effectuated in retaliation for his reports of Locus Management's violations of state and federal laws governing the offer, sale, and/or purchase of securities. *Id*. at ¶ 12. Pawlak commenced an arbitration against Locus Management in February 2024 and thereafter filed a motion for summary determination. *Id*. On July 15, 2025, the arbitrator issued his Final Award, holding that "[a] summary disposition in favor of [Pawlak] and against [Locus Management] is granted on Count I and Count II."[1] *Id*. at ¶¶ 13-14; ECF No. 11-2, FINAL AWARD. The arbitrator went on to grant Pawlak the following relief:

A. An award [of] damages as requested is granted: $1,198,260.18.
B. An award of attorney fees as requested is granted: $103,700.00
C. Arbitration costs as requested are granted: $11,475.62.

ECF No. 11-2, FINAL AWARD.

---

[1] Count I of Pawlak's complaint in arbitration alleged breach of contract, while Count II alleged retaliation in violation of Wisconsin's public policy to the employment at will doctrine.

Between the time that Pawlak filed his arbitration and the date of the arbitrator's final award, Locus was surreptitiously engaged in actions designed to avoid the financial obligations it owed to Pawlak and its other creditors/investors,[2] including the formation of Locus Holdings and the dissolution of Locus Management almost immediately thereafter. Indeed, as noted in Pawlak's Amended Complaint, Locus Holdings was formed on August 12, 2024 (after Pawlak instituted his arbitration proceeding), and, per the Ohio Secretary of State, it filed its Certificate of Registration on November 6, 2024. ECF No. 11, Am. Compl. ¶ 24; Ex. 1, Locus Holdings, LLC – Foreign LLC – Certificate of Registration.[3] Less than one month later, on December 3, 2024, Locus Management filed its Certificate of Dissolution. ECF No. 11-3.

As detailed in Pawlak's Amended Complaint, the dissolution of Locus Management was "part of a merger involving numerous Locus entities" pursuant to a "Restructuring Agreement" that called for the capitalization of Locus Holdings 'through contributions by the Locus

---

[2] The Locus restructuring was taking place against the backdrop of litigation instigated by its investors, who filed suit in October 2024, alleging that Locus Solutions "swindled [them] out of millions of dollars and eventually ran Locus into the ground" in furtherance of "their conspiracy to steal the still-valuable intellectual property from the investors." *See* ECF No. 1, Verified Complaint (¶ 1) in *Blue Ocean Legacy Trust, et al. v. Locus Solutions, LLC. et al.*, Case No. 1:24-Cv-01878, N.D. Ohio, filed Oct. 28, 2024. The plaintiffs' Complaint alleged violations of Federal Securities and Exchange Act § 10(b) and Rule 10B-5, Ohio Securities Fraud, common law fraud, breach of fiduciary duties (self-dealing and duties of care), breaches of the Ohio Limited Liability Company Act, and civil conspiracy.

[3] Although Pawlak did not specifically reference this document in his Amended Complaint, the Court can take judicial notice of the facts set forth therein pursuant to Fed. R. Evid. 201(b), which provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." The Ohio federal courts have recognized that "[p]ublic records and government documents are generally considered 'not to be subject to reasonable dispute,'" and that "[t]his includes public records and government documents available from reliable sources on the internet." *Total Benefits Plan. Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007), *aff'd*, 552 F.3d 430 (6th Cir. 2008).

Restructuring Entities (including Locus Management), and that became effective in October 2024. ECF No. 11, Am. Compl. ¶¶ 18-25. Pursuant to the Restructuring Agreement:

> 26. The contributions made by the Locus Restructuring Entities to Locus Holdings, LLC consisted of all liabilities and obligations necessary to continue the Locus Restructuring Entities' business operations, including websites, trade names, operating agreements, employment agreements, and more.
>
> 27. The Locus Restructuring Entities contributed their employment agreements, and thus their employees, to Locus Holdings, LLC, in order to continue the operations of the previous entities through Locus Holdings, LLC.
>
> 28. The capitalization included all or substantially all of the shareholders of the Locus Restructuring Entities contributing their stock, liens, and liabilities from the Locus Restructuring Entities to Locus Holdings, LLC in order to receive stock in Locus Holdings, LLC in return for their contributions.
>
> 29. The Locus Restructuring Entities were to contribute all assets and liabilities (except certain litigation) to Locus Holdings, LLC.
>
> 30. After the Restructuring Agreement was executed, many of the Locus Restructuring Entities, including Defendant Locus Management, LLC, took steps to transfer certain assets into Locus Holdings, LLC.[4]

*Id*. at ¶¶ 26-30.[5]

With Locus Management out of the way, Locus Holdings has continued the same business run by the same owners,[6] leaving Pawlak (and its other investors and creditors) holding the bag. By its instant motion, Locus Holdings asks this Court to bless its unlawful conduct and dismiss Pawlak's claims without the benefit of discovery or any real scrutiny of its actions. As detailed

---

[4] As Pawlak explains in his Amended Complaint, none of the transfers "caused Locus Management, LLC to receive a reasonably equivalent value in exchange for the transfer." (ECF No. 11, Amend. Compl. ¶ 41.)

[5] The assets transferred, and the Restructuring Entities that owned them, are detailed in Pawlak's Amended Complaint at ¶¶ 31-40, and are documented in the assignments effectuated by those entities, which are attached as exhibits thereto (*See* ECF Nos. 11-4 – 11-10.)

[6] *See* ECF No. 11, Amend Compl. ¶¶ 42-46.

herein, Pawlak has stated plausible claims, and dismissal pursuant to Rule 12(b)(6) is neither warranted nor appropriate.

## LEGAL ARGUMENT

### I. THE RULE 12(b)(6) STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Importantly, "[t]he plausibility standard is not akin to a probability standard," and the inquiry "requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 678-79.

Here, Pawlak's Amended Complaint provides more than enough factual matter to state plausible claims for relief. While Locus Holdings hypothesizes scenarios where his claims could potentially fail, that is simply not the test. Instead, the only relevant inquiry is this: if the Court: (a) construes the Amended Complaint in the light most favorable to Pawlak; (b) accepts all well-pleaded factual allegations set forth therein as true; and (c) draws all reasonable inferences in his favor, is Pawlak's pleading sufficient "'to render the legal claim plausible, i.e., more than merely possible.'"[7] The answer to that question is a resounding yes.

---

[7] *Washington v. First Nat'l Bank of Pennsylvania*, 179 F.4th 1008, 1011 (6th Cir. 2026) (citation omitted); *see also Jerdine v. F.B.I.*, No. 4:11CV00391, 2013 WL 5209894, at *3 (N.D. Ohio Sept. 13, 2013 (confirming that dismissal pursuant to Rule 12(b)(6) is only appropriate where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct").

## II. LOCUS HOLDINGS' MOTION IS PREMATURE

In considering Locus Holdings' criticism of Pawlak's Amended Complaint, it is critical to recall that virtually all of the relevant information and documentation detailing the transactions and dealings that led to the dissolution of Locus Management (Pawlak's former employer), the formation of Locus Holdings, and the continuation of Locus' business is within the exclusive possession and control of the defendants, which are privately held. While Locus Holdings may be correct that the Sixth Circuit generally takes a dim view of allegations based on "information and belief," the Court has ameliorated that harshness by holding that such pleading is "permissible in certain circumstances," including when "a plaintiff may lack personal knowledge of a fact, but has 'sufficient data to justify interposing an allegation on the subject,'" or when he is "required to 'rely on information furnished by others.'"[8] *Starkey v. JPMorgan Chase Bank, NA*, 573 Fed. Appx. 444, 447-48 (6th Cir. 2014) (quoting 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012)).

In apparent recognition of the foregoing principles, the Ohio federal district courts have held that a plaintiff's allegations can be "direct or inferential," and that pleading on information and belief is warranted "'where the facts are particularly within the possession and control of the defendant'"—as they indisputably are in this case—"'or where the belief is based on factual information that makes the inference of culpability plausible.'" *Gerling & Assoc. v. Odulair, LLC*, No. 2:16-cv-1000, 2017 WL 2790669, at *6 (S.D. Ohio June 28, 2017) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)[9] and *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120

---

[8] Conversely, the Court has emphasized that pleading on information and belief "is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader,'" which is obviously not the case here. *Starkey*, 573 Fed. Appx. at 447-48.

[9] In *Boykin*, which the Ohio federal courts have consistently cited with approval, the court went further, noting that "even in the context of Federal Rule of Civil Procedure 9's more stringent requirements for pleading 'special matters,' we have held that 'allegations may be based on

(2d Cir. 2010)); *see also Hunter v. Booze Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 224 (S.D. Ohio 2019) (same); *Antioch Litigation Trust v. McDermott Will & Emery*, 738 F. Supp. 2d 758, 765 (S.D. Ohio 2010) (confirming that "qualifying words such as 'upon information and belief' and 'appear' are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts").

Moreover, the Unites States Supreme Court, other federal circuit courts of appeal, and myriad federal district courts, including those sitting within the Sixth Circuit, have refused to grant Rule 12 motions absent at least some discovery in cases where there is a reasonable expectation that discovery will reveal evidence supporting the plaintiff's claims. Indeed, in addressing Rule 12(b)(6), the *Twombly* Court itself noted that all a plaintiff needs to do in order to defeat a motion to dismiss is "nudge[] their claims across the line from conceivable to plausible," going on to emphasize that "[a]sking for plausible grounds to infer" unlawful conduct by the defendant "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the unlawful conduct alleged. *Twombly*, 544 U.S. at 556, 570; *see also Cardigan Mountain Sch. v. New Hampshire Ins. Co.,* 787 F.3d 82, 88 (1st Cir. 2015).

Illustrative of how trial courts sitting within this circuit have dealt with 12(b)(6) motions in cases that involve questions of successor liability is *Carter v. Paschall Truck Lines, LLC*, in which a district court in neighboring Kentucky denied such a motion, noting the fact-specific nature of the inquiry and that "discovery proves to be rather helpful in performing this analysis." *Carter*, 324 F. Supp. 3d 900, 906-07 (W.D. Ky. 2018) The court went on explain that "in an effort

---

information and belief when facts are peculiarly within the opposing party's knowledge.'" *Boykin*, 521 F.3d at 215 (emphasis added) (citation omitted).

to preserve judicial economy, [it] will order a period of discovery specifically on the issue of whether . . . [Defendant] ECN is a successor to [Defendant] EFC before the court analyzes the substance of the claim against EFC," and it ultimately concluded it would "wait to decide this issue [successor liability] until after discovery, at which point [Defendant] may file a motion for summary judgment on the matter." *Id.* at 910. Other cases holding similarly are numerous. *See*, *e.g.*, *Vital Pharms., Inc. v. USA Sports, LLC*, No. 3:11-CV-975, 2012 WL 760561, at *5 (M.D. Pa. Mar. 8, 2012) ("Because the issue on a motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims,' the Court will not resolve the predecessor entity issue on a motion to dismiss.") (internal citation omitted); *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 339 (E.D. Pa. 1994) (finding that any determination of successor liability at the motion to dismiss stage "will be factual, and therefore we cannot properly consider the issue at this point in time"); *In re PA Co-Man, Inc.*, 644 B.R. 553, 645 (Bankr. W.D. Pa. 2022) (describing the defendant's "grievance" with "respect to business operations" as "without merit," and going on to conclude that "[t]he contours of all of the hallmarks of continuity alleged by [Plaintiff], and disputed by the Defendants, will be proper subject of discovery by the parties"); *Azko Nobel Coatings Inc. v. Pearl Ave. USA, Ltd.*, No. 2:09CV540, 2010 WL 11564918, at *2 (E.D. Va. Feb. 23, 2010) (denying 12(b)(6) motion in successor liability case, staging, "Azko argues that at the present time the true relationship between the defendants is unknown to Azko, and that discovery is required to further substantiate its allegation of successor liability. The Court agrees with Azko's contention").

As set forth above, and discussed further below, Pawlak has met meets his burden of providing sufficient factual matter to state a claim for relief that is plausible on its face." But if

there were any questions in that regard, Locus Holdings' motion should still be denied pending a period of discovery specifically on the issue of successor liability.

## III. PAWLAK HAS PLED SUFFICIENT FACTS TO STATE PLAUSIBLE CLAIMS AGAINST LOCUS HOLDINGS

"Ohio follows the traditional rule of successor liability: although a successor in a merger ordinarily assumes its predecessor's liabilities, a purchaser of assets for cash does not." *Dedicated Nursing Assoc., Inc. v. Buckeye Forest At Akron LLC*, No. 2:25-cv-236, 2026 WL 575073, at *3 (S.D. Ohio Mar. 2, 2026). As Locus Holdings concedes in its brief, however, there are several exceptions to that general rule, including: "(1) the buyer expressly or impliedly agrees to assume such liability" (the Assumption Exception); "(2) the transaction amounts to a de facto consolidation or merger" (the Merger Exception); "(3) the buyer corporation is merely a continuation of the seller corporation" (the Mere Continuation Exception); and "(4) the transaction is entered into fraudulently for the purpose of escaping liability" (the Fraud Exception). *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 861 N.E.2d 121, 130 (Ohio 2006). Ultimately, to state a viable claim for successor liability, a Pawlak must simply allege "the transfer of some assets from the predecessor to the successor"—which he has done (*see* Am. Compl. ¶¶ 20-31)—and show "that a state law exception to the general rule regarding successor liability applies." *In re SII Liquidation Co.*, No. 10-60702, 2014 WL 3893364, at *2 (Bankr. N.D. Ohio Aug. 8, 2014).

In this case, Pawlak's Amended Complaint plausibly alleges facts sufficient to support application of each of the foregoing exceptions. In arguing to the contrary, Locus Holdings implies (if it does not outright contend) that Pawlak is required to plead the existence of each element of each exception to state a viable claim for successor liability. Courts in this district have rejected that notion, however, describing it as "harsh" considering that at the pleading stage, "most of the information concerning the specifics between [the alleged predecessor and successor entities] is

not readily available," and concluding that therefore "[o]nly through discovery will Plaintiff have an opportunity to identify specific facts to support [his] theory." *In re SII Liquidation Co.*, 2014 WL 3893364, at *2.

### A. Pawlak pled sufficient facts for the assumption exception.

Here, Locus Holdings appears concerned that Pawlak did not specify "which of the 14 Locus Restructuring Entities" actually transferred employment agreements, and that this missing fact is somehow fatal to his Complaint claim. But again, Pawlak is not tasked with proving its case at this point; instead, he must simply plead facts that, if true, support his claim.

As set forth above, the Amended Complaint does just that. First, as Locus Holdings concedes, the Amended Complaint alleges that the "Locus Restructuring Entities were to contribute *all assets and liabilities* (except certain litigation) to Locus Holdings, LLC." ECF No. 11, Am. Compl. ¶ 29 (emphasis added). It follows that if Locus Management (one of the Locus Restructuring Entities) contributed its assets and liabilities (including the liability associated with the Arbitration case) to Locus Holdings, that Holdings then assumed that liability and is obligated to pay on the liability. These are facts sufficient to survive a motion to dismiss and get to the discovery stage where Pawlak has the ability to determine exactly what the "certain litigation" was that was excluded from the Restructuring Agreement, and more importantly, if the Arbitration and the Arbitration Award were excluded, exactly why they were excluded and how that exclusion might relate to Pawlak's claims, such as the fraud exception.

Locus Holdings said it best, this exception is concerned with the "express language" of contracts. Pawlak pled that the express language of the Restructuring Agreement called for Locus Holdings, the "buyer" (using that term extremely loosely here as there is no evidence of a purchase or any money paid to Locus Management) to assume Locus Management, the seller's, liabilities. Apparently stating that Locus Management contributed "all assets and liabilities" is not enough to

survive *Twiqbal*, and instead Pawlak was required to get into extreme detail, adding in that "the employment agreement is a liability" in case that wasn't already implied. That, of course flies in the face the notion that "pleadings of successor liability are subject to the lenient pleading requirements of Rule 8(a),"[10] which simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

As it stands, Pawlak pled more than enough detail. If Locus Holdings assumed all of Locus Management's liabilities (a fact alleged by Pawlak, and to be deemed true for purposes of a motion to dismiss), then that means Locus Holdings assumed liability for the employment agreement, and ultimately the Arbitration Award, which means that the motion to dismiss must fail. This failure alone is enough to throw out the motion to dismiss as to Count Two, but Pawlak will address the other exceptions as well.

### B. Plaintiff pled sufficient facts for the merger exception.[11]

First, it should be noted that the factors laid out in the *Welco* case cited by Locus Holding are just that, factors. *Welco Indus., Inc. v. Applied Cos*., 67 Ohio St. 3d 344, 349 (1993). *Welco* does not state that each element *must be present* to find a merger, and the Ohio federal courts have rejected that argument, holding that, "[n]o single factor is determinative, and a *de facto* merger may be found even if only some factors are present." *Dedicated Nursing Assocs.*, 2026 WL 575073, at *4. As with most areas of the law, courts perform a balancing test and look at all of the factors. At a bare minimum, Pawlak pled more than enough facts to survive a motion to dismiss.

---

[10] *In re PA Co-Man, Inc.*, 644 B.R.at 645.

[11] "A *de facto* merger is a transaction that results in the dissolution of a predecessor corporation and its total absorption into the successor." Dedicated Nursing Assocs., 2026 WL 57073, at *4.

Not all hallmarks must be present to determine that a de facto merger exists. *Eberhard Architects, LLC v. Schottenstein, Zox & Dunn Co., LPA*, 2015-Ohio-2519, ¶ 23 (8th Dist.). But several of them are indeed present here. For example, the *Welco* Court cites the "continuity of shareholders resulting from a sale of assets in exchange for stock" as being an important consideration. *Welco*, 67 Ohio St. 3d at 349. And as Pawlak explains in his Amended Complaint, that's just what happened here:

> The capitalization [of Locus Holdings] included all or substantially all of the shareholders of the Locus Restructuring Entities [which include Locums Management] contributing their stock, liens, and liabilities from the Locus Restructuring Entities to Locus Holdings, LLC, in order to receive stock in Locus Holdings, LLC in return for their contributions.

(ECF No. 11, Am. Compl. ¶ 28.)

Also relevant per *Welco* is "the immediate or rapid dissolution of the predecessor corporation." *Welco*, 67 Ohio St. 3d at 349. As detailed, Locus Holdings, the successor corporation, filed its Certificate of Registration with the Ohio Secretary of State on November 6, 2024. ECF No. 11, Am. Compl. ¶ 24; Ex. 1, Locus Holdings, LLC – Foreign LLC – Certificate of Registration.[12] Less than one month later, on December 3, 2024, Locus Management filed its Certificate of Dissolution. ECF No. 11-3. Thus, this factor too is present and weighs in favor of finding a de facto merger.

---

[12] Although Pawlak did not specifically reference this document in his Amended Complaint, the Court can take judicial notice of the facts set forth therein pursuant to Fed. R. Evid. 201(b), which provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." The Ohio federal courts have recognized that "[p]ublic records and government documents are generally considered 'not to be subject to reasonable dispute,'" and that "[t]his includes public records and government documents available from reliable sources on the internet." *Total Benefits Plan. Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007), *aff'd*, 552 F.3d 430 (6th Cir. 2008).

Ultimately, the touchstone is whether the predecessor corporation has in effect been totally absorbed into the successor corporation. *See Welco*, 67 Ohio St.3d at 349. To this end, a transfer of assets for stock is the quintessential sign that a de facto merger has taken place. *Aluminum Line Prods. Co. v. Brad Smith Roofing Co*., 109 Ohio App.2d 246, 265 (8th Dist. 1996).

What has been said by Locus Holdings in its brief is almost more telling than Pawlak's Complaint. Regarding Locus Management's assets, Locus admits that at least some of those assets were encumbered by UCC financing statements. It follows then that one of two things happened related to those financing statements. Either the financing statements were paid off before the "restructuring" took place, which would mean that the assets were no longer encumbered, which would negate much of the motion to dismiss as it relates to Pawlak's third claim, or they weren't paid off. However, if they weren't paid off, then it follows, and the Court can follow the trail that the creditors, i.e., those holding an interest (be it stocks or otherwise) in Locus Management and the other Locus Restructuring Entities, would demand a stake (be it stocks or otherwise) in the new entity, Locus Holdings, as a result of the Restructuring Agreement, which would further tip the *Welco* factor scales to the side of a merger. In essence, Locus Holdings asserts in its response that it is liable either under the merger exception, or the fraudulent conveyance or fraud exceptions, but argues that because Pawlak did not state precisely which one (due to the lack of discovery) his claims must fail. This assertion is as preposterous as it seems.

Further, there is extremely strong evidence, included in the allegations of the Complaint, that the business of Locus continued and continues under the new regime with the same owners. First, there is ample evidence that all of the prior entities shut down. This is an interesting fact, because courts often look to the prior entities in purchases to determine whether a merger took place. The more a previous business sells off only a portion of its business and then continues to

conduct the remainder of its business, the less likely it is that a merger took place. Conversely, when the prior businesses shut down completely (especially after conspicuously transferring trade names that are then unabashedly used in the new company's business) and the new company continues on operating that same business, it is more likely that a merger took place. The facts alleged in the complaint satisfy a large portion of the first and third *Welco* factors.

Additionally, and as discussed in the previous section, the Restructuring Agreement called for Locus Management (as well as the other Locus Restructuring Entities) to contribute *all* of their assets and liabilities to Locus Holdings. This fact seems to fit the exact requirements of the fourth *Welco* factor.

In light of the foregoing, it is evident that Pawlak's Complaint includes a plethora of well-founded allegations to support the merger exception. The only factor that was not addressed is the commonality of shareholders, which Pawlak cannot conceivably address without discovery, due to the non-public nature of Locus Holdings, LLC. That said, the *Welco* factors, as they stand with Pawlak plausibly establishing the existence of three of them, are more than enough to survive a motion to dismiss, again.

### C. Pawlak pled sufficient facts for the mere continuation exception.

"The 'mere continuation' exception requires 'the continuation of the business entity'" after the transaction. *Neighbors Opposing Pit Expansion, Inc. v. New Richmond Dev. Corp., LLC*, 2023 WL 12252762, at *3 (S.D. Ohio Sept. 29, 2023) (citation omitted). Common ownership "is critical to this analysis," and "'[w]hen the asset transfer occurs at arm's length between entities with different owners, successor liability is not established.'" *Id*. (Citation omitted.) As noted above, Pawlak has alleged, and cited facts supporting, common ownership.

In considering Locus Holdings' argument, it is first important to note that it incorrectly states the holding of *Health Carousel Travel Network, LLC v. Alecto Healthcare Services*

*Wheeling, LLC*, 2024-Ohio-4599, ¶¶ 37-38 (1st Dist.). The *Health Carousel* Court actually said "[f]actors to consider in reviewing whether a successor corporation merely continues the business of a previous corporation are whether the new corporation shares common owners or directors, whether the new corporation consists solely of the assets of the old corporation, and whether the old corporation continued to exist as a viable business after the asset transfer. *Id., citing Kuwatch v. Klimat Master Contrs*., 1993 Ohio App. LEXIS 5121, *8-9 (1st Dist. Oct. 27, 1993), *citing Flaugher v. Cone Automatic Machine Co*., 30 Ohio St.3d 60 (1987). Once again, we are talking about factors.

Again, none of the prior Restructuring Entities continued to exist, which provides a major tilting of the scales towards the side of continuation. Thus, Locus Holdings hangs its hat on the notion that without evidence of owners or directors, and without evidence that the "all assets and liabilities" contributed to Locus Holdings were the *only* assets of Locus Holdings, Pawlak's claim must fail. As noted above, against this backdrop, courts have held that the lack of information on shareholders and assets, information that cannot be gleaned without discovery, is not a sufficient basis to grant a motion to dismiss. *See*, *e.g.*, *Carter*, 324 F. Supp. 3d at 910; *Vital Pharms., Inc.*, 2012 WL 760561, at *5; *Brennan*, 850 F. Supp. at 339; *In re PA Co-Man, Inc.*, 644 B.R. at 645; *Azko Nobel Coatings Inc.*, 2010 WL 11564918, at *2.

For those reasons, Pawlak's Amended Complaint should, again, survive Locus Holdings' motion to dismiss.

**D. Pawlak pled sufficient facts for the fraud exception**

It should be noted that Pawlak has more than adequately pled sufficient evidence for one of the successor liability exceptions. Thus, the motion to dismiss should be denied, even if the evidence in support of the fraud exception is not as strong as the other exceptions. Fraud is generally the more difficult item to prove, but as with information on shareholders and assets,

discovery related to the Restructuring Agreement and payments to Locus Management and the other Locus Restructuring Entities associated with the transfer of assets to Locus Holdings will undoubtedly reveal the factual evidence that this Court needs to fully and completely rule on Plaintiff's claim for successor liability.

## IV. PAWLAK PLED SUFFICENT FACTS TO STATE A CLAIM FOR FRAUDULENT TRANSFER

First and foremost, Pawlak's Amended Complaint pleads the cause of action for fraudulent transfer, including all required elements necessary to state a claim. Locus Holdings takes issue with the notion of whether the assets that were transferred (a fact it conspicuously does not deny) actually constitute "transfers" under the definition of R.C. 1336.01(L). But to survive a motion to dismiss, Pawlak is not required to prove the sufficiency of the transfer itself. To do that, he again needs discovery to determine what specific assets fell within the generic "all assets" language of the UCC statements in question, presumably by the production of the underlying financing agreements related to the assets in question. As it stands, Pawlak pled that the transfer of assets in this case constitutes a transfer under the UFTA. In essence, Locus Holdings is now asserting an affirmative defense (upon which it bears the burden of proof) to the presumption that the assets were transferred, by seeking to provide evidence of a lien that negates the asset. Again, this is more appropriate for a motion for summary judgment, after which time Pawlak can gather information related to the lien, including the timing and superiority of the alleged lien, whether the lien was paid off prior to the transfer (or whether it wasn't, which again would help shape one or the other of Pawlak's claims).

Regarding the actual intent claim, Locus Holdings apparently concedes that Pawlak's claim is sufficient. "Of the added allegations in the Amended Complaint, there is only one that Holdings has not already addressed in this brief that appears to relate to this claim, and it is remarkably

hollow." ECF No. 12, Motion to Dismiss at 17. A claim can obviously be "hollow" while still surviving a motion to dismiss. But Pawlak's claim is not hollow. The timing of the arbitration, the restructuring, and the cancellation of the prior entities are all parts of the actual intent claim. Locus Holdings apparently wants Plaintiff to restructure his pleading, or to rewrite the initial paragraphs again as part of the Third Claim, but none of that is required. What is required are facts, such as the fact that the Locus Restructuring Entities contributed all assets and liabilities to Locus, during the arbitration, without receiving adequate value for those assets, and then subsequently shuttered the Locus Restructuring Entities, without paying Plaintiff amounts due. If true, these facts show that Locus Management transferred the assets in order to avoid paying Pawlak pursuant to the Employment Agreement and Arbitration Award.

Pawlak is not, and absent discovery cannot be, aware of the precise value received by Locus Management for its assets, but it is clear that Locus Management did not pay Pawlak, which implies that whatever amount was paid to Locus Management was insufficient. Pawlak's Amended Complaint shows a tangled and incestuous web of Locus Restructuring Entities who each contributed all of its assets and liabilities to Locus Holdings LLC and subsequently (and quickly) ceased doing business. These are the hallmarks of a fraudulent transfer. Rather than granting Locus Holdings' motion to dismiss, it makes sense to allow the case to continue to the discovery phase, where Pawlak can have an opportunity to gather additional information related to the transfers, in order to determine what value, if any, was actually given for the contributions of the Locus Restructuring Entities. For these reasons, Pawlak's claim for fraudulent transfer should survive this motion to dismiss.

## CONCLUSION

Locus Holdings' motion to dismiss should be denied because Pawlak has provided more than enough evidence to state claims for relief, on his second and third claims of the Amended Complaint.

Respectfully submitted,

*/s/Michael R. Fortney*

Michael R. Fortney (#0092325)
FORTNEY LAW, LLC
300 Weatherstone Dr. #303
Wadsworth, OH 44281
(330) 619-8502
mike@ohiolienlawyer.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 28, 2026, a copy of the foregoing was emailed to opposing counsel.

*/s/Michael R. Fortney*

Michael R. Fortney #0092325